IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


MELISSA YVETTE FAIR                                                    PLAINTIFF


     v.                    CIVIL NO. 5:17-CV-5251


NANCY A. BERRYHILL,[1] Acting Commissioner,
Social Security Administration                                         DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Melissa Yvette Fair, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) under the provision of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff protectively filed her current application for SSI on October 5, 2015, alleging an inability to work since June 1, 2015, due to anxiety, depression, panic disorder, PTSD, and panic attacks. (Tr. 51, 68). An administrative hearing was held on September 14, 2016, at

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

which Plaintiff appeared with counsel and testified. (Tr. 32-46). Barbara Hubbard, a Vocational Expert (VE), also testified. (Tr. 46-49).

In a written opinion dated November 29, 2016, the Administrative Law Judge (ALJ) found that Plaintiff had severe impairments of major depression, anxiety, asthma, and obesity. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairment did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 416.967(b) except that Plaintiff was "able to perform simple tasks with simple instructions. She must work in a controlled environment with no exposure to dust, fumes or smoke in concentrated amounts and no temperature extremes." (Tr. 14). With the help of a vocational expert (VE), while the Plaintiff had no past relevant work, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a price marking clerk, a mail routing clerk, or a library clerk. (Tr. 20-21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on October 4, 2017. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have submitted briefs, and the case is now ready for decision. (Docs. 12, 13).

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th

Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet

3

or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 413.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920.

**III.  Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ erred in affording "little weight" to ARNP Williams' medical opinion; and 2) the ALJ erred in his RFC determination by not accounting for Plaintiff's moderate limitations in daily living, social functioning, and concentration, persistence, or pace, which left the Step Five determination unsupported by substantial evidence. (Doc. 12).

**A. Subjective Complaints and Symptom Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

4

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. In addressing Plaintiff's credibility, the ALJ noted Plaintiff's testimony at the hearing that she was unable to work due to her panic attacks, major anxiety, depression, and post-traumatic stress disorder. (Tr. 34-35). Plaintiff also testified that the side effects from her medications caused her to fall. (Tr. 36). Plaintiff testified that she had asthma that had worsened in in the last year with her weight gain. (Tr. 35). Plaintiff also testified that she had tinnitus. (Tr. 35). Plaintiff stated that she could drive a car; that she attended church and Celebrate recovery meetings regularly; that she went to the grocery store; that her hobbies included watching television and doing puzzles; that she could do some laundry; that she could walk her dogs: and that she would go to a friend's house to watch football games. She also testified that she had three to four bad days per week. (Tr. 44). On those days, she would stay in the recliner, watching television and working on puzzles. (Tr. 44). She claimed that her health declined in June of 2015 when she found out that her daughter had been sexually molested by her father. (Tr. 45).

According to Plaintiff's Function Reports, she cared for her pets with assistance from her son; she had no problems with personal care; while her son did most of the cooking, she could prepare simple meals; she could do some laundry and cleaning; she could drive a car; she could shop in stores for food and clothing; she attended counseling, visited her friends' homes and went to church on a regular basis; and she assisted with teaching the three-year-old class at her church. (Tr. 189-196, 210-217). She reported that her attention span would vary; that she could sometimes finish what she started; and that she could follow written and spoken instructions with repetition. (Tr. 215-217).

5

As for Plaintiff's physical impairments, the record demonstrates that Plaintiff's asthma had been treated conservatively for years with medication and that she had experienced some relief. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain).

The Court also notes that on one occasion, on February 16, 2016, Plaintiff reported that she had not been taking her Advair and was "just being lazy." (Tr. 330). See Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) (Plaintiff's failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits).

With respect to Plaintiff's mental impairments, the record demonstrates that Plaintiff was treated conservatively with medication and therapy for her anxiety and depression. Moreover, the medical record demonstrated that Plaintiff's medication improved her symptoms. Impairments that can be controlled with treatment or medication are not disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment controllable with treatment or medication is not considered disabling).

Although it is clear that Plaintiff suffers some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**B.  The ALJ's RFC Determination and Medical Opinions:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own

descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

"The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (citations omitted). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(d)(2))

In the present case, when determining that Plaintiff could perform light work with limitations, the ALJ considered the relevant medical records, the medical opinions from treating and non-examining physicians, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")

7

(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Plaintiff claims that the ALJ should have afforded more weight to the opinion of advanced registered nurse practitioner (ARNP), Celeste Williams, as her opinion was based on a longitudinal treatment relationship with Plaintiff and the observations which resulted. (Doc. 12, p. 9). Nurse Williams treated Plaintiff during the relevant time period and also issued a Medical Source Statement on December 29, 2015. (Tr. 342-344).

Acceptable medical sources include: licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licenses podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a); see also SSR 06–3p. According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources. 20 C.F.R. §§ 416.913(a), 416.927(a)(2) and (d). Thus, generally, as a nurse practitioner, Ms. Williams is not an acceptable medical source. See SSR 06–3p. However, other sources, including nurse-practitioners, may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." See SSR 06–3p.

Here, the ALJ considered the Medical Source Statement authored by Nurse Williams, where she found Plaintiff had extreme limitations in the following areas: her ability to

8

understand and remember detailed instructions; her ability to carry out detailed instructions; her ability to maintain attention and concentration for extended periods; and her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. (Tr. 343). The ALJ acknowledged that opinions from medical sources such as Nurse Williams, are important and that they should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file. (Tr. 19). Ultimately, the ALJ gave Nurse Williams' Medical Source Statement little weight in that it did not cite to any supporting clinical test results or findings and appeared to be based upon Plaintiff's subjective complaints. (Tr. 19).

Moreover, Nurse Williams' Medical Source Statement was a checkbox form. The Eighth Circuit has stated that a conclusory checkbox form has little evidentiary value. See Anderson v. Astrue, 696 F.3d 790 (8th Cir. 2012); Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010); Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) (checklist format, generality, and incompleteness of treating physician's assessments limited their evidentiary value); see also Mason v. Shalala, 994 F.2d 1058, 1065 (3rd Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

Furthermore, the ALJ considered all of the medical treatment notes authored by Nurse Williams, who saw Plaintiff on six occasions, including four visits prior to the relevant time period and two visits during the relevant time period. The ALJ found that Nurse Williams' treatment notes did not record any significant limitations due to the Plaintiff's depression and anxiety, which the ALJ noted were considered situational and directly related to Plaintiff's estrangement from her children, their legal problems, and her divorce. (Tr. 19). In sum, the ALJ declined to give controlling weight to Nurse Williams' opinions for good and well-

9

supported reasons. See Goff v. Barnhart, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion."). The Court also notes that other treating physicians did not place any work restrictions on Plaintiff as a result of physical or mental conditions. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

The ALJ also considered and gave great weight to the opinion of Dr. Terry Efird, Ph.D., who examined Plaintiff and diagnosed her with major depressive disorder, moderate; panic disorder with agoraphobia; and a GAF score of 55-65. (Tr. 297). Dr. Efird noted that Plaintiff endorsed the ability to drive unfamiliar routes; to shop independently; to perform most ADL's adequately; to socially interact by going to a weekly Celebrate Recovery group meeting and to church; to watch football games; and to visit with her sister on the phone daily. (Tr. 297-298). Dr. Efird also found that Plaintiff communicated and interacted in a reasonably socially adequate manner; that she communicated in a reasonably intelligible and effective manner; that she could perform most basic cognitive tasks required for basic work-like activities; that she could track and respond adequately; that Plaintiff had no remarkable problems with persistence during the evaluation; that she appeared to have the mental capacity to persist with tasks if desired; and that she appeared to be capable of performing basic work like tasks within a reasonable time frame. (Tr. 298).

The ALJ also considered the opinions of non-examining medical consultants, Drs. Forte, Hazelwood, Takach, and Jackson, and gave great weight to the portions of those opinions that found that Plaintiff was capable of performing unskilled work, at the light exertional level with avoidance of pulmonary irritants. (Tr. 19).

Moreover, the Court notes that Plaintiff's depression and anxiety appear to be related to her situational issues with her family. Plaintiff testified that a triggering event for her mental health issues occurred in March of 2015, when she discovered that her husband had been sexually molesting their daughter. (Tr. 44-45). From that, followed issues with her husband, a divorce, issues with her daughter joining "a cult," legal trouble with her other children, and serious financial problems. (Tr. 44-45, 245). The medical record also showed that Plaintiff's treatment for mental health issues began after March of 2015, when Plaintiff's family issues surfaced. (Tr. 245, 285, 290, 295, 363). Nurse Williams first assessed Plaintiff with situational depression and anxiety in July of 2015, just after the triggering event. (Tr. 285). Also, in July of 2015, Plaintiff was seen at Ozark Guidance Center and Springwoods Behavioral Health for her situational depression and anxiety related to her family troubles. (Tr. 244-245, 251-252). Dr. Efird's Evaluation of Plaintiff also indicated that her depression and panic disorder were related to her family issues. (Tr. 295). While Plaintiff underwent counseling at Fresh Roots Family Counseling, clinic records indicated that she was treated for situational depression, anxiety, and panic attacks due to her family situation. (Tr. 353, 355, 357, 363, 366-368).

After careful review, the Court finds that there was substantial evidence to support the ALJ's RFC determination of light work, except that she is able to perform simple tasks with simple instructions, must work in a controlled environment with no exposure to dust, fumes, or smoke in concentrated amounts and no temperature extremes.

**C.     Hypothetical Question to the Vocational Expert:**

Here, the ALJ determined at Step 3 that Plaintiff's impairments did not meet or equal a listed impairment. (Tr. 13-14). In so finding, the ALJ determined that Plaintiff had moderate restrictions in the areas of activities of daily living, in social functioning, and in concentration,

persistence or pace. (Tr. 13-14). However, the ALJ also stated that, "The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)." (Tr. 14).

At the September 14, 2016, hearing, the ALJ posed the following hypotheticals to the Vocational Expert:

> ALJ: Assume we have an individual who is the same age, education and work background as that of the [Plaintiff], that is to say no past relevant work relevant history over the last 15 years. Assume that from an exertional standpoint this individual would be limited to light work. Assume further this individual would need to work in a controlled environment in which they are not exposed to dust, fumes or smoke in concentrated amounts. They should also not be exposed to temperature extremes. Are there jobs such a person could perform?
>
> VE: Yes, Your Honor. One example would be a job with the title price marking clerk. DOT Code 209.587-034. It's light exertional level and SVP of 2, unskilled. For the national economy, 291,000. Of those jobs estimated and for Arkansas, 2,400. A second example would be a job with the title routing clerk. It's routing mail in an office or internal environmental inside. DOT –
>
> ALJ: Is that the same thing as a mail clerk?
>
> VE: Yes, Your Honor.
>
> ALJ: Okay, go ahead.
>
> VE: DOT is 222.587-038. That is light exertional level. SVP of 2. National number is 53,600. Arkansas estimated 500. Would you like one more?
>
> ALJ: One more.
>
> VE: It is library shelving clerk. DOT 249.687-014. Also, light exertional. SVP of 2. 16,100 for the nation, and estimated 100 for Arkansas.

> ALJ: 16,000 how many?
>
> VE: 100.
>
> ALJ: For the second hypothetical, as the individual would need a job and while these simple tasks and simple instructions and incidental contact with the public, would that eliminate any of those jobs?
>
> VE: No, Your Honor, those jobs are all – fit those restrictions.

(Tr. 47-48). The ALJ relied upon the Vocational Expert's testimony.

Plaintiff alleges that the ALJ's hypothetical to the Vocational Expert failed to account for Plaintiff's moderate limitations in daily living, social functioning, and concentration, persistence or pace; thus, leaving the Step Five determination unsupported by substantial evidence. (Doc. 12, p. 13). The Court has already addressed the ALJ's RFC determination, and finds the remainder of Plaintiff's argument to be without merit.

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." Lacroix v. Barnhart, 465 F3d 881 (8th Cir. 2006) (citing Hinchey v. Shalala, 29 F.3d 428 (8th Cir. 1994)). Moreover, the hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the "concrete consequences" of those impairments. Id. (citing Roe v. Chater, 92 F.3d 672-77 (8th Cir. 1996).

During the relevant time period, on November 17, 2015, Nurse Practitioner Williams saw Plaintiff for complaints of anxiety. (Tr. 289). Nurse Williams' clinic notes indicated that Plaintiff needed an increase in her mediation and noted that Plaintiff continued to go to therapy and Celebrate Recovery meetings. (Tr. 289). That day, Nurse Williams found Plaintiff's mood and affect to be normal, as well as normal behavior, judgment and thought content. (Tr. 290). She was assessed with situational mixed anxiety and depressive disorder. (Tr. 290).

Dr. Efird's evaluation of Plaintiff showed that her symptoms had been present since the March 2015 incident with her daughter and that her symptoms were better controlled with medication management and counseling. (Tr. 295). Dr. Efird noted Plaintiff's endorsement of her ability to perform self-care tasks and the ability to drive unfamiliar routes. (Tr. 296). Upon examination, Plaintiff was able to recall five digits forward and five digits backward. (Tr. 297). Plaintiff also spontaneously recalled three of three items immediately, and two of three items after an approximately five-minute delay. (Tr. 297). The remaining item was correctly identified via multiple choice cuing. (Tr. 297). Plaintiff also performed serial threes at a reasonable pace. (Tr. 297). Dr. Efird also noted that Plaintiff appeared primarily cooperative; her affect was appropriate to content; she had no remarkable indications of acute emotional distress; her thoughts were primarily logical, relevant, and goal-directed; and she was alert, and oriented to person, place, and time. (Tr. 296). Dr. Efird assessed Plaintiff with major depressive disorder, moderate, panic disorder with agoraphobia, and a GAF score of 55-65. (Tr. 297). As noted above, Dr. Efird opined that Plaintiff communicated and interacted in a reasonably socially adequate manner; that she communicated in a reasonably intelligible and effective manner; that she could perform most basic cognitive tasks required for basic work-like activities; that she could track and respond adequately; that Plaintiff had no remarkable problems with persistence during the evaluation; that she appeared to have the mental capacity to persist with tasks if desired; and that she appeared to be capable of performing basic work like tasks within a reasonable time frame. (Tr. 298).

During a visit to Mercy Clinic on February 16, 2016, with complaints of sinus issues, Plaintiff exhibited some signs of anxiousness; however, Nurse Williams found her judgment

and thought content to be normal. (Tr. 334). Plaintiff also reported that she was not being followed by a psychiatrist. (Tr. 332).

During Plaintiff's time undergoing counseling at Fresh Roots Family Counseling, she reported in May of 2016, a slight improvement with therapy and medication in her brain fog, anger and overall functioning. (Tr. 358). Plaintiff reported some slight improvement in reduced fogginess again on two occasions during counseling in June of 2016. (Tr. 356, 357). At a June 14, 2016 appointment at Mercy Clinic, Plaintiff reported to Nurse Williams that while she still had the occasional panic attack, she felt like she was getting better. (Tr. 368). She reported improvement in sleep habits, and she reported that she was feeling more settled with her purchase of a home and a dog. (Tr. 366). Also, on that day, Nurse Williams observed that Plaintiff's mood and affect and behavior were normal. (Tr. 368). On June 22, 2016, and June 28, 2016, Plaintiff reported to her counselor that she had a slight improvement in reducing anxiety symptoms, and that while she was distressed regarding her family's legal troubles, she was implementing therapy practices in her daily life. (Tr. 353, 354).

Also as previously discussed, Plaintiff testified that while she had three to four bad days per week since her family events triggered her anxiety and depression, she could drive a car; she attended church and Celebrate recovery meetings regularly; she went to the grocery store; her hobbies included watching television and doing puzzles; she could do some laundry; she could walk her dogs; and she would socialize by going to a friend's house to watch football games. Moreover, in her Function Reports, Plaintiff stated that she cared for her pets with assistance from her son; she had no problems with personal care; while her son did most of the cooking, she could prepare simple meals; she could do some laundry and cleaning; she could drive a car; she could shop in stores for food and clothing; she attended counseling, visited her

15

friends' homes and went to church on a regular basis; and she assisted with teaching the three-year-old class at her church. (Tr. 189-196, 210-217).

Based on a thorough review of the record in this case, and as the Court found in Lacroix, the ALJ's hypothetical question included all of Plaintiff's limitations found to exist by the ALJ and set forth in the ALJ's description of Plaintiff's RFC. As previously discussed, the ALJ's findings regarding Plaintiff's RFC are supported by substantial evidence. Therefore, the hypothetical question and the Vocational Expert's answers constituted substantial evidence supporting the denial of benefits. See Lacroix, 465 F.3d at 889.

Accordingly, the ALJ's decision is hereby affirmed and Plaintiff's Complaint is dismissed with prejudice.

IT IS SO ORDERED AND ADJUDGED this 1st day of February, 2019.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE